# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 26, 2010

## STATE OF TENNESSEE v. JIMMY SPRAGUE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S51,629      R. Jerry Beck, Judge**

---

**No. E2010-00288-CCA-R3-CD-FILED-AUGUST 3, 2011**

---

The defendant, Jimmy Sprague, was convicted of failure to appear in court, a Class E felony. He was sentenced as a Range I, standard offender to two years in the Tennessee Department of Correction consecutive to an existing federal sentence. On appeal, he argues that: (1) the evidence was insufficient to support his conviction; (2) the trial court improperly refused to allow the admission of his medical records; and (3) he was improperly sentenced. After careful review, we affirm the judgment of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH, J., joined. NORMA MCGEE OGLE, J., concurred in results.

Steve McEwen, Mountain City, Tennessee (on appeal), and Stephen M. Wallace, District Public Defender, and Terry L. Jordan, Assistant Public Defender (at trial), for the appellant, Jimmy Sprague.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; H. Greeley Wells, Jr., District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arose when the defendant failed to appear in court on December 16, 2005. The defendant had previously been charged by the State with failure to comply with the sex offender registry and with aggravated perjury. He subsequently posted bail and appeared in court on October 14, 2005, to answer these charges. He entered a plea of not guilty, and the case was scheduled for announcement on December 16, 2005, with trial dates (of April 10, 2006, and June 20, 2006) to follow. The defendant failed to appear as scheduled on

December 16, 2005. A *capias* was issued for his arrest, and he was taken into custody on December 20, 2005.

The defendant was indicted on January 11, 2006, on a single count of felony failure to appear. At trial, the State presented two witnesses. Circuit Court Clerk for Sullivan County, Mr. Tommy Kerns, testified that the court records showed that: the defendant came before Judge Beck on October 14, 2005; on that date he was informed of his duty to appear again in court on December 16, 2005; he failed to appear in court on December 16, 2005; and there was nothing to indicate that the defendant had attempted to contact the court on that date. The State also presented the testimony of Detective Melanie Adkins of the Kingsport Police Department, who identified the defendant as the same individual who was charged with the felony offenses in the case that was scheduled for December 16, 2005. After the State rested, the defense called two witnesses on the defendant's behalf. Mr. Kyle Hubert Bledsoe, Jr., the defendant's bail bondsman, testified that his records reflected that the defendant had called the bonding company to check in on December 12, 2005, and December 17, 2005 (both before and after the date he allegedly failed to appear in court). The defense also called Ms. Rachel Freeman, a registered nurse working at Cardiovascular Associates heart clinic. After the prosecution objected to the relevance of the witness's testimony, the defense proffered testimony from Ms. Freemen to the effect that the defendant, who was a patient at the clinic where she worked, had missed several important appointments to have his blood checked and his medicine adjusted. The trial court ruled that this testimony was not admissible under Tennessee Rules of Evidence 404 and 406, and the witness was dismissed. The defendant was advised of and waived his right to testify in his own defense, pursuant to the procedures described in *Momon v. State*, 18 S.W.3d 152, 162-64 (Tenn. 1999), and the case was submitted to the jury.

The jury found the defendant guilty. On June 26, 2009, he was denied alternative sentencing, sentenced to the maximum term of two years as a Range I offender, and ordered to serve his sentence consecutive to a previously imposed federal sentence. This appeal followed.

I.

On appeal, the defendant argues that the evidence was insufficient to support his conviction for failure to appear. Specifically, he contends that the State failed to present any proof that he was aware that he had missed his court date. Therefore, the defendant claims that the State failed to prove that his failure to appear was done "knowingly," as required by the statute. However, the defendant's argument is based on an overly-broad interpretation of the statute's *mens rea* requirement that is inconsistent with prior decisions of this court. Properly interpreted, the statute requires the State to show only that the defendant was

previously made aware of his duty to appear in court on a specific date, and that he failed to appear in court on that date. Under this standard, the evidence produced by the State at trial was sufficient to support the defendant's conviction.

"When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *see also* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Great weight is given to the result reached by the jury in a criminal trial; matters such as the credibility of witnesses, the weight given their testimony, and the proper resolution of any conflicts in the evidence are ordinarily left in their care. *Dorantes*, 331 S.W.3d at 379. Consequently, "on appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Id.* (quoting *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007)). In essence, a jury's verdict of guilt strips the defendant of the presumption of innocence and replaces it with a presumption of guilt, which the defendant must strive to overcome on appeal. *Id.*

When weighing the sufficiency of the evidence, direct and circumstantial evidence must be treated the same, and the standard of appellate review is the same for both evidentiary types. *Id.* at 379-381. Even when a criminal offense has been proven exclusively through circumstantial evidence, the weight given that evidence, the inferences drawn from that evidence, and the extent to which all the circumstances are consistent with guilt are primarily jury questions. *Id.* at 379. Under no circumstances may an appellate court "substitute its inferences for those drawn by the trier of fact," regardless of whether direct evidence exists or the case is wholly circumstantial. *Id.*

The defendant in the case at bar was convicted of violating Tennessee Code Annotated section 39-16-609(a)(4), which states: "It is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person . . . [h]as been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding or penal institution at a specified time or place. . . ." T.C.A. § 39-16-609 (2011). The defendant argues that the State did not introduce any proof at trial as to his state of mind at the time he failed to appear. After reviewing the record, we agree that the State failed to present any such evidence. The only evidence appearing in the record bearing on the defendant's state of mind at the time he missed court was the testimony of his bail bondsman to the effect that the defendant had checked in with the bonding company both before and after the missed court date – a circumstantial fact from which a jury might infer that the defendant was unaware that he had missed court and had simply made a mistake.

The defendant argues that because the State did not produce any evidence negating the possibility that he missed the court date by mistake, out of forgetfulness, or with some mental state amounting to less than a "knowing" *mens rea*, the State failed to meet its burden of proving that he "knowingly" failed to appear in court. We disagree that the statute imposes this sort of *mens rea* requirement.

We grant that the language the legislature chose to use in Tennessee Code Annotated section 39-16-609(a) is perhaps not the most articulate for its intended purpose. The phrase "knowingly" is generally used in our criminal code to establish a *mens rea* requirement that the "person [be] aware of the nature of the conduct" when referring to conduct or "aware that the circumstances exist" with respect to circumstances." T.C.A. § 39-11-106(a)(20) (2011). By placing the word "knowingly" directly in front of the words "fail to appear" (part of the statute's *actus reus*), the most natural reading of this part of the statute, if the phrase were to be considered in isolation, would be that the legislature intended for the word "knowingly" to modify the phrase it immediately precedes, *i.e.*, the phrase concerning the defendant's act of failing to appear.

If the statutory language is read thus, the word "knowingly" in section 39-16-609 would be construed as imposing a specific *mens rea* requirement, applicable to the act of "fail[ing] to appear," that the defendant be aware of the nature of his conduct. Under this reading, in order to obtain a conviction, in addition to proving that the defendant had been previously made aware of his or her court date and had failed to appear in court, the State would also have to produce *some affirmative evidence* that on that specified time and date, the defendant was simultaneously aware of (1) the date and time he or she was due in court, (2) the then-present date and time, and (3) the fact that he or she was, in fact, located somewhere other than the particular place at which his or her presence was legally required (and did not, for example, simply get lost or go to the wrong courtroom or courthouse).

The difficulty with the defendant's interpretation of the statute's *mens rea* requirement is that it is inconsistent with the purposes and structure of the statute as a whole, leads to absurd results, and is inconsistent with our longstanding practice as reflected in numerous decisions of this court. With respect to the practice of this court, in *State v. Whittaker*, No. M2008-02859-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 196, at **14-15 (Tenn. Crim. App. at Nashville, Mar. 2, 2010); *State v. Williams*, No. W2009-00024-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 824, at **8-10 (Tenn. Crim. App. at Jackson, Sept. 28, 2009); and *State v. Dunnorm*, No. E2006-00366-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 47, at **9-10 (Tenn. Crim App. at Knoxville, Jan. 22, 2007), to name just a few, this court has consistently affirmed convictions under Tennessee Code Annotated section 39-16-609(a) against sufficiency of the evidence challenges despite the absence of any evidence bearing on the defendants' *mens rea* at the time of the offense that would serve to exclude the

possibility that the defendants in question simply either (1) forgot the day and time they were due in court, (2) forgot the then-present day or time, or (3) lost track of their then-present location in relation to the location where their presence was legally required. When examining each of these convictions, we held that evidence sufficient to support the jury's conclusion that the defendant failed to appear after having been previously made aware of his legal duty to attend court on the date at issue sufficed to uphold the convictions. *See Whittaker*, 2010 Tenn. Crim. App. LEXIS 196, at *14 ("[T]he evidence viewed in the light most favorable to the State proves that the Defendant was aware of his April 28, 2006, court date."); *Williams*, 2009 Tenn. Crim. App. LEXIS 824, at *9 (holding evidence that defendant was previously informed of his court date, both orally at prior hearing as well as in writing on a card given by the clerk's office, was sufficient to uphold conviction); *Dunnorm*, 2007 Tenn. Crim. App. LEXIS 47, at *9 (upholding conviction against defendant's sufficiency of the evidence claim that he did not "knowingly" miss his court date because "the State presented evidence that the Defendant would have received a card listing his court date"). While *Whittaker*, *Williams*, and *Dunnorm* did not specifically address the statutory interpretation issue squarely raised by this appeal, they are certainly instructive for their collective holding that evidence showing a defendant failed to appear after receiving proper notification is sufficient to support a conviction for knowingly failing to appear in court.

Today, we conclude that a defendant "knowingly" fails to appear in court within the meaning of section 39-16-609, when he or she fails to appear after having been informed of his or her duty to appear in court on the date at issue. In other words, "knowingly" does not require a defendant to possess an "awareness of the conduct" pertaining to his or her act of failing to appear. *See* T.C.A. § 39-11-106(a)(20). Instead, as used in this section of the statute, knowingly requires the defendant to have an "aware[ness] of the circumstances" giving rise to his legal obligation to appear. *See id*. Consequently, the *mens rea* requirement of the statute is met once the defendant has been made aware of his duty to appear in court on a specific date.

The contrary interpretation urged by the defendant is inconsistent with the text and structure of the statute as a whole. As a general rule, courts interpret statutes in a manner that gives effect to every clause contained therein. *See, e.g.*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994). In analyzing a statute's text, we are guided by the basic principle that a statute should be read as a harmonious whole, and its separate clauses interpreted within their broader statutory context in a manner that furthers the statute's purpose. Here, the legislature went to great lengths to expressly establish an affirmative defense to a charge under section 39-16-609(a) that "[t]he person had a reasonable excuse for failure to appear at the specified time and place." T.C.A. § 39-16-609(b)(2). This statutory text expressly providing for an affirmative defense in cases where a "reasonable" excuse exists would be rendered entirely superfluous if the slightest possibility of the

existence of an unreasonable excuse (*i.e.* perhaps he or she " just forgot") sufficed to evade all criminal liability under the statute.

Moreover, the defendant's proposed interpretation of the statute would lead to absurd results. "The courts of Tennessee have adopted the traditional rule that 'we will not apply a particular interpretation to a statute if that interpretation would yield an absurd result.'" *In re: Estate of Tanner*, 295 S.W.3d 610, 625 (Tenn. 2009) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). It would be the rare defendant who, after deciding to fail to appear in court, left behind any direct or circumstantial evidence that was so inconsistent with the idea that he or she simply forgot about the court date that a finder of fact could exclude that possibility beyond a reasonable doubt. Evidence that the defendant had fled or was preparing to flee the jurisdiction might provide potent circumstantial evidence, but "go[ing] into hiding to avoid prosecution or court appearance" is one of only five situations that the legislature chose to expressly criminalize under section 39-16-609. *See* T.C.A. §39-16-609(a)(1) – (a)(5). A situation in which the defendant confessed to police or others that he intentionally missed his court date might also provide evidence of a violation under the defendant's interpretation of the statute, but we do not believe the legislature passed this law in the sanguine belief that all those violating it would convict themselves out of their own mouths.

The gears of justice in this State would grind rapidly to a halt if defendants could evade legal obligations and criminal consequences simply by skipping their legally required court dates, cloaked in the aegis of a requirement that, before any punishment for their truancy could be imposed, a jury of twelve of their peers would have to unanimously find beyond a reasonable doubt that they did not simply overlook the passage of time or forget their appointed date with justice. Section 39-16-609 was passed by the legislature to ensure that defendants arrive in court on their appointed day to answer the charges against them. If they fail to do so after having been made aware of the date of their obligation, they have "knowingly" failed to appear within the meaning of the statute.

In so holding, we do not mean to imply that the fact that a particular defendant either did not know or had forgotten important facts on the day in question, such as (1) the day or time he or she was due in court, (2) the then-present day or time on the date he or she was due in court, (3) the whereabouts of the courthouse, or (4) his or her actual whereabouts on the day and time he or she was due in court, could not in some circumstances serve to excuse the crime of knowingly failing to appear. However, issues such as these are affirmative defenses that must be raised and proven by the defendant pursuant to sections 39-11-204(a) and 39-16-609(b)(2) of the Tennessee Code.

Using the proper standard of *mens rea*, the evidence adduced at trial suffices to uphold

the defendant's conviction. The clerk of the circuit court testified that court records reflected the defendant was arrested and released on an appearance bond. Thereafter, he appeared in court on October 14, 2005, was appointed counsel, and entered a plea. At that time, the defendant was directed to appear in court on December 16, 2005. This is sufficient evidence for a jury to infer that the defendant had been made aware of the circumstances that he was "lawfully released from custody . . . on condition of subsequent appearance at an official proceeding . . . [on the] specified time or place," and specifically at an appointed room of the Sullivan County Courthouse at nine o'clock on the morning of December 16, 2005. By supporting the jury's conclusion that the defendant failed to appear after having been made aware of these circumstances, the evidence suffices to uphold the defendant's conviction. *See Whittaker*, 2010 Tenn. Crim. App. LEXIS 196, at *14; *Williams*, 2009 Tenn. Crim. App. LEXIS 824, at *9; *Dunnorm*, 2007 Tenn. Crim. App. LEXIS 47, at *9. Although there was some circumstantial evidence in the record that might support an inference that the defendant had a reasonable excuse for missing his court date, including the fact that he checked in with his bail bondsman after his court date and may have suffered from a heart condition, the jury was free to conclude that this circumstantial evidence did not suffice to give rise to a reasonable inference that the defendant had a reasonable excuse for failing to appear. On appeal, we may not substitute our own inferences for those drawn from the evidence by the trier of fact, *see Dorantes*, 331 S.W.3d 379, and will not do so today.

II.

Next, the defendant argues that the trial court erred in excluding certain of the defendant's medical records. The defendant urged admission of these medical records for purposes of showing that he routinely missed important scheduled medical appointments, thereby giving rise to an inference that he had trouble with his memory and casting doubt on whether he missed his court date "knowingly." The trial judge held that the defendant failed to miss these medical appointments with sufficient regularity to permit the records to be admitted as evidence of his habit of missing important appointments. We agree that the trial judge's decision to exclude the records was proper.

The admission of evidence at trial is entrusted to the broad discretion of the trial court, and, as such, a trial court's ruling on the admission of evidence may only be disturbed upon a showing of an abuse of that discretion. *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *Id.* (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)); *State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003).

"All relevant evidence is admissible" unless a particular constitutional provision, statute, or rule excludes it. Tenn. R. Evid. 402. "Evidence which is not relevant is not admissible." *Id.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. This general relevancy test governs the admissibility of almost all evidence, including evidence pertaining to a person's habit. However, rules pertaining to the admissibility of evidence of a person's habits have been further specified in Tennessee Rule of Evidence section 406(a), which states that "evidence of the habit of a person, an animal, or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eye-witnesses, is relevant to prove that the conduct of the person, animal, or organization on a particular occasion was in conformity with the habit or routine practice." A habit is further defined as "a regular response to a repeated specific situation," and a routine practice is defined as "a regular course of conduct of an organization." Tenn. R. Evid. 406(b). The express specification of the admissibility of habit evidence contained in Rule 406 does not serve to limit the more general test of Rule 401, which generally permits the admission of relevant evidence. *See State* v. *Blocker*, C.C.A. NO. 03C01-9803-CR-00120, 1999 Tenn. Crim. App. LEXIS 197, at \*\*14-15 (Tenn. Crim. App. at Knoxville, Mar. 10, 1999) (*citing* Neil P. Cohen et al., TENNESSEE LAW OF EVIDENCE 200 (3d ed. 1995) ("Since Rule 406 admits evidence that would probably be admitted anyway under the general relevance principles embraced in Rule 401, it is arguable that Rule 406 adds little new to modern evidence law.")). Rather, Rule 406 simply serves to clarify that, while the admissibility of evidence relating to a person's *character* is subject to the admissibility limitations of Rule 404, evidence relating to a person's *habits* has not been so limited. *See id.* at \*\*14.

In light of our earlier holding addressing the *mens rea* required to violate section 39-16-609(a), these medical records were properly ruled to be inadmissible at the defendant's trial because they were not relevant within the meaning of Rule 401. The records reflect that the defendant often missed important medical appointments. They do not explain the reason or provide any excuse for these absences. Proof of unexplained absences from other important life events is not relevant in any *exculpatory* sense to any factual determination necessary to adjudicate a criminal charge that simply requires, in essence, that the defendant had a unexplained absence from court after having been properly informed of his legally-required court date. Nor would proof of the defendant's unexplained absences from these medical appointments – without more – assist in the development of an affirmative defense under the statute by rendering it any more or less probable that the defendant had a reasonable excuse for his failure to appear in court on the day in question. Consequently, the trial court was well within its discretion to exclude the medical records.

III.

Next, the defendant argues that the trial court erred by (1) denying him an alternative sentence, and (2) ordering his sentence to run consecutively to a previously-imposed federal sentence. These claims are without merit.

"The burden of demonstrating that a sentence is erroneous is [placed] upon the party appealing." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The standard of review of a trial court's sentencing decision is *de novo*, with a presumption that the trial court's determinations are correct, so long as the trial court considered the proper sentencing principles and all relevant facts and circumstances. *Id.* at 344-45. If our review reflects that the trial court properly considered all relevant factors and that the findings of fact are adequately supported by the record, we must affirm the sentence even if we would prefer a different result. *State v. Goodwin*, 143 S.W.3d 771, 783 (Tenn. 2004); *State v. Pike*, 978 S.W.3d 904, 926-27 (Tenn. 1998). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails" and "our review is simply *de novo*." *Carter*, 254 S.W.3d at 345 (internal quotation omitted).

Here, the trial court appears to have followed the sentencing act and appropriately applied all of the sentencing factors. We can discern no error with the trial judge's decision to impose a consecutive sentence. Whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997) (citing *State v. James*, 688 S.W.2d 463 (Tenn. Crim. App. 1984)). A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

 (1)    [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

 (2)    [t]he defendant is an offender whose record of criminal activity is extensive;

 (3)    [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

 (4)    [t]he defendant is a dangerous offender whose behavior indicates little

or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)     [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     [t]he defendant is sentenced for an offense committed while on probation; or

(7)     [t]he defendant is sentenced for criminal contempt.

T. C. A. § 40-35-115(b) (2011); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). When it ordered the defendant's sentence to be served consecutive to his federal sentence, the trial court relied on Tennessee Code Annotated sections 40-35-115(2) (the "extensive criminal history" factor) and 40-35-115(4) (the "dangerous offender" factor). With respect to the trial court's use of the "dangerous offender" factor, the Tennessee Supreme Court has made clear that "the imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant, and that the consecutive sentences . . . reasonably relate to the severity of the offenses committed." *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). It is undisputed that the trial court did not explicitly address the *Wilkerson* factors prior to imposing the consecutive sentence.

However, we decline to engage in a *de novo* review of the trial court's findings with respect to this factor because the record fully supports the trial court's decision to impose consecutive sentences based on the "extensive criminal history" factor. During sentencing, the trial court made numerous individual findings with respect to the defendant's criminal history and concluded that "the defendant has a lengthy prior record, a very serious prior record [given the] nature of the offenses." Thereafter, when the trial court moved on to determine whether the defendant's sentence should be served concurrently or consecutively, the trial judge incorporated these previous findings and conclusions by reference, explaining that "I don't think we need to cover this same [criminal history] groundwork again" before giving the attorneys the opportunity to raise any new issues. The trial court's decision to impose consecutive sentencing based on the defendant's extensive criminal history is well supported by the record, including his finding that the defendant stood convicted of a prior

felony offense for aggravated sexual battery and numerous serious misdemeanor offenses, including stalking, solicitation of sex from a minor, assault, and theft. Consequently, the trial court's decision to order the defendant's sentence to be served consecutively was well within his discretion, and we decline to disturb it on appeal.

For similar reasons, we hold that the trial court did not abuse its discretion by denying the defendant's request for alternative sentencing. The burden of establishing suitability for probation rests with the defendant. T.C.A. § 40-35-303(b). A defendant seeking probation must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." *Carter*, 254 S.W.3d at 347 (*citing State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). No defendant is entitled to a presumption that he or she is a favorable candidate for probation. *Id.* While an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing in the absence of evidence to the contrary, *see* T.C.A. § 40-35-102(6), this does not apply to "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation." T.C.A. § 40-35-102(5). Instead, the law provides for sentences involving confinement if, *inter alia*, "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct" and/or if "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." T.C.A. § 40-35-103(1).

In the case at bar, the court denied the defendant an alternative sentence based upon the defendant's lengthy criminal history. The defendant argues that the trial court improperly denied him an alternative sentence because he was convicted of a Class E nonviolent felony – one of the least serious felonies in the code. Moreover, the defendant also claims that the court failed to give proper consideration to numerous mitigating factors – including his age, ill health, and the fact that he will likely be in his eighties before he is released from federal prison. However, our review of the record leads us to conclude that the trial court properly considered all relevant statutory factors and that its findings of fact with respect to the defendant's criminal history are adequately supported by the record. Consequently, we cannot and will not disturb them on appeal. *See Goodwin*, 143 S.W.3d at 783.

**Conclusion**

Based on the foregoing and the record as a whole, we affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-11-