IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 11, 2014 Session

## CLAYTON ARDEN, SURVIVING SPOUSE OF DEBORAH ARDEN, DECEASED v. KENYA I. KOZAWA, M.D. ET AL.

Appeal from the Circuit Court for Monroe County
No. V12284S      J. Michael Sharp, Judge

No. E2013-01598-COA-R3-CV - Filed June 18, 2014

The plaintiff, as surviving spouse, appeals the trial court's dismissal of his health care liability action against the defendant doctor who treated the plaintiff's wife prior to her death and the hospital wherein the treatment occurred. The trial court granted the defendants' motions for summary judgment based upon the plaintiff's failure to strictly comply with the pre-suit notice requirements of Tennessee Code Annotated § 29-26-121 (Supp. 2013). We reverse the trial court's ruling that the plaintiff had to strictly comply with the provisions of the notice requirement and conclude that the plaintiff substantially complied with said requirement. We affirm, however, the trial court's ruling that the plaintiff could not rely upon the statutory 120-day extension of the statute of limitations due to his failure to properly serve the notice. We therefore affirm the trial court's dismissal of the plaintiff's claims as barred by the statute of limitations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Donna Keene Holt and G. Turner Howard, III, Knoxville, Tennessee, for the appellant, Clayton Arden.

Heidi A. Barcus, Knoxville, Tennessee, for the appellees, Kenya I. Kozawa, M.D., and Ken Kozawa, M.D., P.C.

Gary G. Spangler and Carrie S. O'Rear, Knoxville, Tennessee, for the appellee, Sweetwater Hospital Association.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Clayton Arden, filed the instant health care liability action, alleging that his wife, Deborah Arden, received negligent medical treatment immediately prior to her death. Defendant, Dr. Kenya Kozawa, treated Ms. Arden at Sweetwater Hospital Association ("the Hospital") beginning on August 24, 2011, due to her complaints of abdominal pain. Ms. Arden subsequently developed pancreatitis and other complications, which Dr. Kozawa also treated. Ms. Arden's condition worsened, however, and she died on September 15, 2011.

On August 1, 2012, Mr. Arden's attorney sent pre-suit notice letters, as required by Tennessee Code Annotated § 29-26-121, to Dr. Kozawa and the Hospital's administrator via Federal Express Priority service. These letters informed the defendants that they would be named in a health care liability action regarding the care provided to Deborah Arden, wife of Clayton Arden. The letters failed to list Mr. Arden's address. Dr. Kozawa's letter was sent to the Hospital at 304 Church Street, Sweetwater, Tennessee, 37874, even though the address listed on the Tennessee Department of Health website for Dr. Kozawa is 304 Wright Street, Sweetwater, Tennessee, 37874.

Mr. Arden filed the instant action against Dr. Kozawa and the Hospital on October 19, 2012. The complaint alleges various instances of medical negligence by the defendants, including (1) failure to perform complete and accurate physical examinations of the patient in light of ongoing abdominal complaints; (2) failure to give appropriate attention to nursing notes and concerns regarding the patient's symptoms; (3) failure to transfer the patient to another facility upon request; and (4) failure to obtain a surgical consult for the patient, who exhibited signs and symptoms of abdominal compartment syndrome, which resulted in abdominal compartment syndrome induced by pancreatitis, multi-system organ failure, and ultimately, death.

A Certificate of Good Faith was filed with the complaint, along with a copy of the notice letters and documentation from Federal Express tracking delivery of the notice letters. Mr. Arden also attached an affidavit from the person who sent the letters. The attached provider list, however, did not contain the address for the Hospital, and there was no certificate of mailing from the U.S. Postal Service because the letters had been sent via Federal Express.

The defendants subsequently filed motions for summary judgment, asserting that Mr. Arden failed to comply with the requirements of Tennessee Code Annotated § 29-26-121.

Specifically, defendants alleged that (1) the letters failed to include the address of Clayton Arden, pursuant to Tennessee Code Annotated § 29-26-121(a)(2)(B); (2) the notice sent to Dr. Kozawa was invalid because it was not sent to the address listed on the Tennessee Department of Health website, pursuant to Tennessee Code Annotated § 29-26-121(a)(3)(B)(i); (3) the health care provider list did not include the address for the Hospital, pursuant to Tennessee Code Annotated § 29-26-121(a)(2)(D); and (4) the letters were not sent via U.S. certified mail, return receipt requested, resulting in no certificate of mailing from the United States Postal Service, as required by Tennessee Code Annotated § 29-26-121(a)(4).

Following a hearing on the motions for summary judgment, the trial court granted the motions, ruling that Mr. Arden's failure to strictly adhere to the requirements of the statute was fatal to his health care liability action. The court found that there was no demonstration of extraordinary cause to excuse Mr. Arden's noncompliance with the statute. The trial court also found that Mr. Arden's complaint was filed outside the one-year statute of limitations and that Mr. Arden was not entitled to take advantage of the 120-day extension granted by Tennessee Code Annotated § 29-26-121(c) because of his failure to strictly comply with the statutory notice requirements. Accordingly, Mr. Arden's complaint was dismissed. Mr. Arden timely appealed that ruling to this Court.

## II. Issues Presented

The parties present the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by dismissing Mr. Arden's claims for failure to strictly comply with the requirements of pre-suit notice set forth in Tennessee Code Annotated § 29-26-121 when actual notice was given to the defendants more than sixty days before the complaint was filed and a Certificate of Good Faith was filed with the complaint.

2. Whether Mr. Arden substantially complied with Tennessee Code Annotated § 29-26-121.

3. Whether the trial court erred by ruling that Mr. Arden's claims were barred by the applicable statute of limitations.

4. Whether any subsequent claims raised by Mr. Arden would be barred under the doctrine of *res judicata*.

## III.  Standard of Review

The issues presented on appeal are questions of law.  We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness.  Tenn. R. App. P. 13(d); *Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). As our Supreme Court has explained:

> The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent.  To that end, we start with an examination of the statute's language, presuming that the legislature intended that each word be given full effect.  When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005)).

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) (other internal citations omitted).

## IV.  Pre-Suit Notice Requirements

Tennessee Code Annotated § 29-26-121 provides, in pertinent part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

> (A) The full name and date of birth of the patient whose treatment is at issue;
>
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the

patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:

(A) Personal delivery of the notice to the health care provider or an identified individual whose job function includes receptionist for deliveries to the provider or for arrival of the provider's patients at the provider's current practice location. Delivery must be established by an affidavit stating that the notice was personally delivered and the identity of the individual to whom the notice was delivered; or

(B) Mailing of the notice:

(i) To an individual health care provider at both the address listed for the provider on the Tennessee department of health web site and the provider's current business address, if different from the address maintained by the Tennessee department of health; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient; or

(ii) To a health care provider that is a corporation or other business entity at both the address for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient.

(4) Compliance with subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

(b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

(c) When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. Personal service is effective on the date of that service. Service by mail is effective on the first day that service by mail is made in compliance with subdivision (a)(2)(B). In no event shall this section operate to shorten or otherwise extend the statutes of limitations or repose applicable to any action asserting a claim for health care liability, nor shall more than one (1) extension be applicable to any provider. Once a complaint is filed alleging a claim for health care liability, the notice provisions of this section shall not apply to any person or entity that is made a party to the action thereafter by amendment to the pleadings as a

result of a defendant's alleging comparative fault.

## A. Content of Pre-Suit Notice

The trial court found that strict compliance was required with regard to the pre-suit notice requirements of Tennessee Code Annotated § 29-26-121. Mr. Arden asserts that the trial court erred in dismissing his claims due to minor technical failings in the content of the pre-suit notice. Mr. Arden contends that he must only show substantial compliance with the requirements regarding the content of the notice and that he has done so in this case. The defendants concede that substantial compliance is the proper standard for measuring Mr. Arden's conformation with the content requirements. They assert, however, that Mr. Arden failed to demonstrate substantial compliance.

Our Supreme Court has recently explained that substantial compliance is the proper standard with regard to the requirements for the contents of the pre-suit notice. *See Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, __ S.W.3d __, No. M2012-02270-SC-R11-CV, 2014 WL 1632183 at *6-7 (Tenn. Apr. 24, 2014). As explained in *Thurmond*:

> In *Myers*, we declared that the "essence" of the pre-suit notice statute is to notify potential defendants "of a [health care liability] claim before suit is filed." 382 S.W.3d at 309 (stating that section 29-26-121(a) is "to give prospective defendants notice of a forthcoming lawsuit"). Thus, we concluded that the section 29-26-121(a) requirement of pre-suit notice is "fundamental," "mandatory," and "not subject to satisfaction by substantial compliance." *Id*. at 309, 310. Because no pre-suit notice of any kind had been given or even attempted in *Myers*, we did not decide whether the statutory "requirements as to the content of the notice . . . may be satisfied by substantial compliance." *Id*. at 311.

> We answered that question in *Stevens*, where the plaintiff attempted to comply with the pre-suit notice requirement but failed to provide a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." 418 S.W.3d at 552 (quoting Tenn. Code Ann. § 29–26–121(a)(2)(E)). We explained that the pre-suit notice content requirements of Tennessee Code Annotated section 29-26-121(a)(2)(A)-(E) serve distinct but related purposes. *Id*. at 554. We held that where strict compliance with "a particular statutory provision is essential to avoid prejudicing an opposing litigant," then the statutory provision will be deemed mandatory and strict compliance required.

*Id*. at 555. After considering the purposes served by the HIPAA-compliant medical authorization, we concluded that a plaintiff cannot satisfy this content requirement merely by providing potential defendants with actual notice of a potential claim. *Id*. However, we stopped short of interpreting the statute as demanding strict compliance. *Id*. Rather, we held that "[n]on-substantive errors and omissions" and "[a] plaintiff's less-than-perfect compliance" with [subsection] 29-26-121(a)(2)(E) will "not derail a healthcare liability claim" so long as the medical authorization provided is "sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id*. Thus, we held that "a plaintiff must substantially comply, rather than strictly comply, with the requirement[ ] of [subsection] 29-26-121(a)(2)(E)." *Id*.

*Myers* and *Stevens* thus instruct that: (1) providing potential defendants pre-suit notice of health care liability claims is the "essence" and "fundamental" purpose of the pre-suit notice requirement, *Myers*, 382 S.W.3d at 309; and (2) unless strict compliance with a notice content requirement "is essential to avoid prejudicing an opposing litigant," substantial compliance with a content requirement will suffice, *Stevens*, 418 S.W.3d at 555.

*Thurmond*, __ S.W.3d at __, 2014 WL 1632183 at *6-7 (Tenn. Apr. 24, 2014).

In this case, the only failings by Mr. Arden with regard to the content of the notices sent were (1) the omission of his own address in the notice letter and (2) the omission of the Hospital's address on the provider list. We conclude that the omission of these addresses did not prejudice the defendants. The Hospital was obviously aware of the Hospital's address, as was Dr. Kozawa, who admits that he practiced at the Hospital. Further, if Mr. Arden's address was necessary in order to gather information about the decedent or the claims, it could have easily been obtained from his attorney, whose contact information was listed in the notices sent. The notices properly listed Mr. Arden's name and relationship to the decedent, as well as the decedent's name and date of birth. The defendants did not demonstrate any prejudice to their ability to investigate the claim by the omission of these addresses. As such, we conclude that Mr. Arden substantially complied with the content requirements for pre-suit notice. The trial court erred in requiring strict compliance regarding the content of the pre-suit notice.[1]

---

[1]We note that while substantial compliance with the statute is sufficient, a plaintiff who does not strictly comply with the statutory pre-suit notice requirements will bear the risk of being deemed to have not substantially complied.

## B. Service of Pre-Suit Notice

Defendants also contend that regardless of whether Mr. Arden substantially complied with the content of the notice sent, he still failed to properly serve the pre-suit notice in the manner required by the statute. Tennessee Code Annotated § 29-26-121(a)(3) specifically provides that the "requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint." The statute then states that the notice may either be personally delivered or mailed. *See* Tenn. Code Ann. § 29-26-121 (a)(3). If the notice is mailed, Tennessee Code Annotated § 29-26-121 (a)(4) provides that compliance "shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested."

As our Supreme Court has explained regarding statutory construction in general:

When courts are called upon to construe a statute, their goal is to give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope. Because the legislative purpose is reflected in a statute's language, the courts must always begin with the words that the General Assembly has chosen. Courts must give these words their natural and ordinary meaning. And because these words are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose.

. . .

The rules of statutory construction permit the courts to employ a number of presumptions with regard to the legislative process. The courts may, for example, presume that the General Assembly used every word deliberately and that each word has a specific meaning and purpose. The courts may also presume that the General Assembly did not intend to enact a useless statute, and that the General Assembly "did not intend an absurdity."

With specific regard to the legislators' knowledge of the existing law affecting the subject matter of the legislation, the courts may presume that the General Assembly knows the "state of the law." In addition, the courts may presume that the General Assembly is aware of its own prior enactments. The courts may likewise presume that the General Assembly is aware of the manner in

-9-

which the courts have construed the statutes it has enacted.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526-27 (Tenn. 2010)(internal citations omitted).

The statutory provisions at issue in this case are clear and unambiguous. The plain language of the statute provides that pre-suit notice may effectively be served in one of two ways: personal delivery or by mail. If the notice is mailed, the statute provides that compliance "shall be demonstrated by filing a certificate of mailing <u>from the United States postal service</u> stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed <u>by certified mail, return receipt requested</u>." Tenn. Code Ann. § 29-26-121 (a)(4) (emphasis added). Reading these provisions together and "constru[ing] these words in the context in which they appear," *see Lee Med., Inc.*, 312 S.W.3d at 526, it is clear that the legislature intended for service of pre-suit notice by mail to be effectuated only through the United States Postal Service via certified mail, return receipt requested. The legislature provided for no other method of service by mail in the statute.

Further, even if the language of Tennessee Code Annotated § 29-26-121(a)(3) and (4) were somehow deemed ambiguous, this Court can also take notice of the fact that the statute was amended from its original version to delete any reference to mailing or delivery utilizing other carriers. The initial version of the statute requiring pre-suit notice, enacted in 2008, provided that the notice could either be "actual written notice provided to the health care provider or such provider's authorized agent; or notice by registered mail, return receipt requested, to the health care provider or such provider's authorized agent; or <u>notice by overnight delivery using a nationally recognized carrier</u>." Health Care Providers - Medical Malpractice - Actions and Proceedings, Pub. Ch. 919, S.B. 2001 (2008) (emphasis added). The current version of Tennessee Code Annotated § 29-26-121(a)(3) and (4) was enacted the following year. Clearly, the present version of the statute omits the above language regarding overnight delivery by a nationally recognized carrier.

As a rule of statutory construction, "a change in the language of the statute indicates that a departure from the old language was intended." *Lavin v. Jordon*, 16 S.W.3d 362, 369 (Tenn. 2000). As this Court has elucidated, "[w]hen the legislature makes a change in the language of a statute, the general rule is that such change raises a presumption that the legislature intended a departure from the old law." *Dunn v. Hackett*, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992). *See also State v. Turner*, 193 S.W.3d 522, 527 (Tenn. 2006) ("When the legislature makes a change in the language of a statute, we must assume that it was deliberate."); *State v. Odom*, 928 S.W.2d 18, 30 (Tenn. 1996) ("When the legislature amends a statute, it presumably does so either to change the law or to clarify it."). Therefore, based upon the legislature's omission of other carriers as a means of mailing or delivery of the pre-

suit notice in the current version of the statute, we must presume that the legislature deliberately intended that the U.S. Postal Service would be the only acceptable means of service of the notice other than personal delivery. *See also* John A. Day, *Med Mal Makeover 2009 Act Improves on '08*, 45 TENN. B.J. 14, 16 (July 2009) (noting that the 2009 amendment to Tennessee Code Annotated § 29-26-121 provides for mailing only through the U.S. Postal Service, with a certificate of mailing from the post office to definitively show the date of the actual mailing).

Mr. Arden contends that only the receipt of actual notice is essential, relying primarily upon this Court's opinion in *Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215 (Tenn. Ct. App. Aug. 31, 2012), *perm. app. denied* (Tenn. Dec. 10, 2013). In *Hinkle*, pre-suit notice was sent to the defendant doctor at the address of the hospital where he had practiced at the time of the plaintiff's injury, via registered letter. *Id*. at *7. The defendant doctor was no longer working at the hospital, however, and the hospital faxed a copy of the letter to the doctor's current place of employment. *Id*. It was undisputed that the doctor received actual notice more than sixty days before the filing of the complaint and that his liability insurer began communicating and exchanging documents with the plaintiff's counsel. *Id*. This Court ruled that such notice was sufficient, stating that the statute "does not preclude proof of delivery of the notice by other means." *Id*. This Court did not, however, address the above-noted change in the statutory requirements that omitted mailing or delivery by other carriers as an acceptable means of service. *Id.*

We decline to extend the holding in *Hinkle* to the case at bar. While it is also undisputed in this case that the defendants received actual notice, the notice was not sent or even attempted to be sent utilizing either of the methods specifically set forth in the statute. Based upon the legislature's intentional omission of mailing or delivery by other carriers as a means for service of the pre-suit notice, we cannot conclude that Mr. Arden's mailing via Federal Express constitutes substantial compliance with the requirements of Tennessee Code Annotated § 29-26-121(a)(3) and (4).

Having found that the sole acceptable method of mailing pre-suit notice would be through the U.S. Postal Service, we conclude that Mr. Arden's mailing through Federal Express Priority service was improper and ineffective. Mr. Arden was therefore precluded from relying upon the 120-day extension of the statute of limitations provided by Tennessee Code Annotated § 29-26-121(c). As such, his complaint filed more than one year after Ms. Arden's death was untimely. *See, e.g., Byrge v. Parkwest Med. Ctr.*, No. E2013-00927-COA-R3-CV, 2014 WL 346675 at *5 (Tenn. Ct. App. Jan. 30, 2014). We affirm the trial court's dismissal of Mr. Arden's lawsuit. The question regarding lack of service to Dr. Kozawa's address as listed on the Tennessee Department of Health website is pretermitted as moot.

## V. *Res Judicata*

We also need not address the defendants' issue regarding whether *res judicata* would prohibit Mr. Arden from re-filing his claims. As stated above, because Mr. Arden did not file his claims within the statute of limitations and could not rely upon the 120-day extension of the statute of limitations, Mr. Arden's claims are clearly time-barred.

## VI. Conclusion

We reverse the trial court's ruling requiring strict compliance with the content requirements of pre-suit notice pursuant to Tennessee Code Annotated § 29-26-121. We affirm the judgment of the trial court dismissing Mr. Arden's claims, however, finding them to be time-barred due to his failure to properly serve pre-suit notice via personal delivery or United States Postal Service certified mail, return receipt requested. Costs on appeal are taxed to the appellant, Clayton Arden. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE