IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. ERIC FLEMMING

**Appeal from the Criminal Court for Davidson County**
**No. 95-D-2513     Seth Norman, Judge**

---

**No. M1997-0073-SC-R11-CD  - Decided April 3, 2000**

---

We granted the appeal in this case to decide (1) whether fists and feet are deadly weapons under Tennessee Code Annotated section 39-11-106(a)(5)(B); and (2) whether the trial court's failure to instruct the jury on criminal responsibility for facilitation of especially aggravated robbery and aggravated robbery was reversible error. We conclude that fists and feet are not deadly weapons under Tennessee Code Annotated section 39-11-106(a)(5)(B). In addition, we conclude that the trial court committed reversible error in failing to instruct the jury on facilitation of aggravated robbery and especially aggravated robbery. Accordingly, we affirm the judgment of the Court of Criminal Appeals and remand this case to the trial court for a new trial.

**Tenn. R. App. P. 11 Permission to Appeal; Judgment of the Court of Criminal Appeals Affirmed**

BARKER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, BIRCH, and HOLDER, JJ. joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Elizabeth B. Marney, Assistant Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee

Jeffrey A. DeVasher, Assistant Public Defender, and Wendy S. Tucker, Assistant Public Defender, Nashville, Tennessee, for the appellee, Eric Flemming

### OPINION

Eric Flemming, the appellee, was indicted for the especially aggravated robbery of Derrick Lamont Smith (the victim) in violation of Tennessee Code Annotated section 39-13-403 (1997). At trial, the State's proof of Flemming's participation in the beating and robbery of the victim rested on the testimony of two witnesses: Juanita Smith and Antonio Batey.

Juanita Smith testified that on June 1, 1995, she observed four men chasing and beating the victim until he fell to the ground. After he fell, the men continued beating the victim with their fists and kicking him. Smith watched as two of the men, Terrance Robinson and Antonio Batey, reached

into the victim's pockets, removed items, and put them in their own pockets. When the victim was later examined at the hospital, he was not wearing rings and a watch that witnesses had testified he always wore. In addition, no money was found on the victim even though he had cashed his paycheck the previous day. Smith did not observe Flemming take any items from the victim.

Antonio Batey, who participated in the robbery of the victim, agreed to testify against Flemming in exchange for remaining in the juvenile court system. At trial, Batey stated that Flemming kicked the victim and beat him with his fists. In addition, Batey testified that he saw Flemming reach into the victim's pockets, though Batey stated that he did not see Flemming take any property from the victim.[1]

The State argued at trial that Flemming was guilty of especially aggravated robbery because he used a deadly weapon (his fists and feet) to complete the crime. A jury found Flemming guilty of especially aggravated robbery and assessed a fine of $12,500.00. In addition, the court sentenced Flemming as a Range 1 standard offender to eighteen years confinement.

Flemming appealed contending that fists and feet are not deadly weapons and that the jury should have been instructed on the lesser-included offenses of facilitation of aggravated robbery and especially aggravated robbery. The Court of Criminal Appeals reversed Flemming's conviction concluding that fists and feet are not within the statutory definition of "deadly weapon." In addition, the Court of Criminal Appeals held that the trial court erred in not instructing the jury on facilitation of especially aggravated robbery and aggravated robbery.[2] We then granted the State's petition for permission to appeal on these issues.

**DISCUSSION**

## A. "Deadly Weapon" under Tennessee Code Annotated section 39-11-106(5)

Tennessee Code Annotated section 39-11-106(5) (1997) sets forth the definition of "deadly weapon."

"Deadly weapon" means:
    (A) A firearm or anything manifestly designed, made or adapted for the

---

[1] Batey's testimony at trial appears to contradict a pre-trial statement made to a police officer in which Batey asserted that an individual to whom he alternately referred as "Eric" or "E" took money from the pocket of the victim during the robbery. Portions of this statement were read into evidence by counsel for the State.

[2] The Court of Criminal Appeals also found that the prosecutor's closing argument impermissibly commented on Flemming's Fifth Amendment right to silence and that the comment was reversible error. We did not grant review on this issue because we agreed with the holding of the Court of Criminal Appeals.

purpose of inflicting serious bodily injury; or

(B) Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury . . . .

The Court of Criminal Appeals held that the scope of the statutory definition is not so broad that it encompasses fists and feet. The State argues that this conclusion is contrary to this Court's decision in Morgan v. State, 415 S.W.2d 879 (Tenn. 1967), as well as the plain language of the statute.

In Morgan, two defendants who used hard objects wrapped in socks to beat the victims of their armed robbery contended that they had not used deadly weapons in the course of their crime. In examining the defendants' contention, we characterized deadly weapons as falling into one of two categories: weapons that are "deadly per se, such as fire arms; and deadly by reason of the manner in which they are used." Id. at 882. This characterization, however, does not suggest that a defendant's body parts could be considered deadly weapons. We reject the State's interpretation of Morgan and agree with the Court of Criminal Appeals that Morgan merely recognizes that some instruments or objects, though not traditionally considered deadly weapons, may become deadly weapons by the manner in which they are used.

The State also contends that fists and feet are deadly weapons within the plain language of section -106 defining "deadly weapon," in part, as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." According to the State, by incorporating the word "anything" into section -106, the General Assembly evinced its intent to include fists and feet within the scope of the definition of "deadly weapon."

We examine this argument in light of relevant principles of statutory construction. Provisions of the criminal code should be "construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104 (1997). This Court's role in construing statutes is to give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. See State v. Butler, 980 S.W.2d 359, 362 (Tenn. 1998). We determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning. See id. Moreover, we will not apply a particular interpretation to a statute if that interpretation would yield an absurd result. See, e.g., State v. Legg, 9 S.W.3d 111, 116 (Tenn. 1999).

Were we to interpret the statute to be written broadly enough to include one's fists and feet within the statutory definition of "deadly weapon," it would lead to an absurd result–the merger of simple and aggravated offenses–which would contradict the expressed intent of the General Assembly. Within the criminal code, the General Assembly has divided many offenses into two categories: simple offenses and enhanced offenses which include aggravated offenses and especially aggravated offenses. A simple offense is composed of the crime's most basic elements. An aggravated offense, by contrast, is the simple offense accompanied by some other element, usually

use of a deadly weapon or serious bodily injury sustained by a victim. See, e.g., Tenn. Code Ann. § 39-13-102(1)(A)-(B), -304(a)(4)-(5) (1997). A combination of these other elements together with the simple offense typically comprises an especially aggravated offense. See, e.g., Tenn. Code Ann. § 39-13-403(A) (1997).

The General Assembly's rationale for grading offenses in this manner is evident in the corresponding sentences that may be imposed for commission of offenses. For example, a defendant convicted of simple assault is guilty of a Class A misdemeanor for which a sentence of eleven months and twenty-nine days and a fine of $2,500.00 may be imposed. See Tenn. Code Ann. § 39-13-101(a)(1)-(2) (1997), § 40-35-111(e)(1) (1997). If, however, that defendant used a deadly weapon in committing the assault, the misdemeanor assault becomes a Class C felony, see Tenn. Code Ann. § 39-13-102(a)(1) (1997), and the defendant is subject to a sentence of between three and fifteen years and a fine up to $10,000.00. See id. § 40-35-111(b)(3) (1997). Thus, the General Assembly has determined that the use of a deadly weapon in the course of an assault merits a penalty more severe than that for simple assault. Clearly, the grading of offenses in the criminal code reflects the General Assembly's intent to punish more harshly enhanced offenses.

The State argues that because fists and feet, in their manner of use or intended use, are capable of causing serious bodily injury, they are deadly weapons. It logically flows from this proposition that it is irrelevant whether or not fists or feet actually cause a serious bodily injury. Because they are capable of causing serious bodily injury, they are per se deadly weapons. If this is so, then the General Assembly's distinction between simple and enhanced offenses is nullified in some circumstances. For example, to prove aggravated assault, the State would need only show that, during the commission of a simple assault, the defendant displayed a deadly weapon. Under the State's broad definition of "deadly weapon," the defendant's fists and feet would inevitably be displayed. Thus, the defendant becomes both the perpetrator and the deadly weapon, the simple assault becomes aggravated assault, and the misdemeanor becomes a felony.

It is difficult, if not impossible, to conceive of a scenario in which a defendant could assault another individual without displaying fists or feet. As an example of how simple assault survives under its theory, the State posits the following hypothetical:

> [A] woman who slaps a man would commit the offense of simple assault . . . whether or not the slap resulted in any bodily injury. If the slap should cause the man to flinch, fall, and hit his head with resulting serious bodily injury . . . she would have committed the offense of aggravated assault based on the serious bodily injury but not with the use of or intended use of her hand as a deadly weapon.

However, the State's theory contradicts its own conclusion. Under the State's theory, the mere fortuity that the man did not fall and sustain a serious bodily injury does not alter the character of the woman's hand as a deadly weapon. Because, in its manner of use, the hand is capable of causing a serious bodily injury, the woman commits aggravated assault by merely displaying the hand, *i.e.*, the deadly weapon.

We do not believe that the General Assembly intended this result by its definition of "deadly weapon." Had the General Assembly intended the definition of "deadly weapon" to encompass body parts, it would have had no reason to also enact a statute criminalizing simple assault when, by the very act of assault, an aggravated assault would occur. Instead, we conclude that the increased penalty for use of a deadly weapon is appropriate when an object or instrument other than one's own body is used in the commission of a criminal offense. Accordingly, we hold that fists and feet are not deadly weapons under Tennessee Code Annotated section 39-11-106(a)(5) (1997), and we affirm the judgment of the Court of Criminal Appeals.

### B. Instruction on criminal responsibility for facilitation of aggravated robbery and especially aggravated robbery

In State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999) we adopted the following test for lesser-included offenses:

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
    (1) a different mental state indicating a lesser kind of culpability; and/or
    (2) a less serious harm or risk of harm to the same person, property or public interest; or
(c) it consists of
    (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offenses in part (a) or (b); or
    (2) an attempt to commit the offense charged or of an offense that otherwise meets the definition of lesser-included offenses in part (a) or (b); or
    (3) solicitation to commit the offense charged or of an offense that otherwise meets the definition of lesser-included offenses in part (a) or (b).

After adopting this test, we set forth a two-part inquiry in which a trial court must engage when determining whether a jury instruction on a lesser-included offense is warranted:

First, the trial court must apply the new test to determine whether a particular lesser offense is included in the greater charged offense. If a lesser offense is not included in the offense charged, then an instruction should not be given, regardless of whether evidence supports it. If, however, the trial court concludes that a lesser offense is included in the charged offense, the question remains whether the evidence justifies a jury instruction on such lesser offense. . . . Whether or not a particular lesser-included offense should be charged to the jury depends on whether proof in the record would support the lesser charge.

Id. at 467-68. The court makes this determination viewing the evidence liberally in the light most favorable to the existence of a lesser-included offense. See id. at 469. "An offense is a lesser-included offense if . . . it consists of facilitation of the offense charged. . . ." Id.; see also Tenn. Code Ann. §§ 39-11-403, -12-107 (1997). Accordingly, facilitation of aggravated robbery and especially aggravated robbery are lesser-included offenses of especially aggravated robbery.

Flemming, however, is entitled to a jury instruction only if the evidence justifies a jury instruction on the lesser-included offense of facilitation of a felony. See Burns, 6 S.W.3d at 467. "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (1997). Thus, the trial court, viewing the evidence liberally in the light most favorable to the existence of a lesser-included offense, should have instructed the jury on facilitation if the evidence was legally sufficient to support a conviction for facilitation.

Having reviewed the record, we agree with the Court of Criminal Appeals that the parties presented legally sufficient evidence to support a conviction of criminal responsibility for facilitation of especially aggravated robbery and aggravated robbery. The Sentencing Commission Comments to section -403 state that application of the facilitation statute is appropriate where an offender participates substantially in a felony but lacks the intent to promote, assist or benefit from the offense. Under the facts of this case, and in the light most favorable to the existence of the lesser-included offense, a jury could reasonably have concluded that, while Flemming participated substantially by kicking and beating the victim, he did not intend to promote, assist or benefit from the offense, because he took no property from the victim.

The State concedes that its proof rests on the testimony of Juanita Smith and Antonio Batey. At trial, Juanita Smith testified that Batey and Terrance Robinson were the individuals who removed property from the victim. She did not testify that she saw Flemming take property from the victim. Moreover, when Antonio Batey was asked by counsel for the State whether he knew what, if anything, Flemming took from the victim, Batey responded that he did not. If the jury accredited that testimony, it might have concluded that Flemming substantially assisted in the robbery of the victim but did not intend to benefit from the crime. Under these circumstances, we conclude that the trial court should have instructed the jury on the lesser-included offenses of facilitation, and its failure to do so constitutes reversible error. Whether an instruction on facilitation will be warranted at Flemming's new trial will depend, of course, on the evidence developed at that trial.

**CONCLUSION**

We hold that fists and feet are not deadly weapons under Tennessee Code Annotated section 39-11-106(a)(5) (1997). We also hold that the trial court committed reversible error in failing to instruct the jury on the lesser-included offenses of facilitation of aggravated robbery and especially aggravated robbery. Accordingly, we affirm the judgment of the Court of Criminal Appeals and remand this case to the trial court for a new trial.

Costs of this appeal are taxed to the appellant, the State of Tennessee.