IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 7, 2009 Session

# HOME BUILDERS ASSOCIATION OF MIDDLE TENNESSEE, ET AL. v. WILLIAMSON COUNTY, ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Williamson County**
**No. 31384   Jeffrey S. Bivins, Chancellor**

———————

**No.  M2008-00835-SC-R11-CV - Filed February 25, 2010**

———————

GARY R. WADE, J., dissenting.

I respectfully dissent.  Although I agree with the majority's sound conclusion that Williamson County was required to collect the new development tax at the time of the application for the building permit, I disagree with the ruling that ultimate tax liability must be based on the projected – rather than the actual – square footage of construction.  I would, therefore, hold that when the developer has paid a sum based on projected square footage and later built a larger structure than initially anticipated, the County would be entitled to recover the deficiency in payment.  See Tenn. Code Ann. §§ 5-6-108(6) (2005), 9-3-202 (1999).

In response to the increase in the demand for local governmental services incident to the location of the General Motors Saturn Plant and the expansion of the Nashville Metropolitan area beyond the boundaries of Davidson County, the General Assembly enacted the Williamson County Adequate Facilities Tax, ch. 118, 1987 Tenn. Priv. Acts 238 (the "Act").  The Act, which was ratified by the County, authorized the imposition of a tax on new development "so as to ensure and require that the persons responsible for new development share in the burdens of growth by paying their fair share for the cost of new and expanded public facilities made necessary by such development."  Id. at § 3.  While section 8 of the Act originally provided that the tax be payable "at the time of application for a building permit for development . . . or, if a building permit is not required, at the time of application for certificate of occupancy," that section was amended in 1989 so as to require the tax to be collected at the time of the application for the building permit.  Act of March 13, 1989, ch. 22, § 3, 1989 Tenn. Priv. Acts 59, 60.

The majority has concluded – I believe correctly – that under this post-1989 version

of the statute, the County would not have been permitted to delay its initial collection of the tax until the issuance of the certificate of occupancy or a date thereafter. In my view, however, the determinative question in this case is whether tax liability is based upon the developer's projection of square footage or the actual size of the construction. The 1989 Amendment to section 8 does not address the calculation of the tax. The method of computation, unambiguously set forth in section 7 of the original Act, did not change:

> For the exercise of the privilege described herein, Williamson County may impose a tax on new development not to exceed
>
> > (a)     one dollar ($1.00) <u>per gross square foot</u> of new residential development.
> >
> > (b)     two dollars ($2.00) <u>per gross square foot</u> of new non-residential development.

(Emphasis added.) It is my opinion that the term "gross square foot of new . . . development" plainly refers to the square footage of the new development as built, and not the estimate provided in the pre-construction plan. "[W]hen the import of a statute is unambiguous, we discern legislative intent 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" <u>Hayes v. Gibson County</u>, 288 S.W.3d 334, 337 (Tenn. 2009) (quoting <u>State v. Flemming</u>, 19 S.W.3d 195, 197 (Tenn. 2000)). Judicial interpretation is restricted to the statutory language absent a lack of clarity in the express terms. <u>Roddy Mfg. Co. v. Olsen</u>, 661 S.W.2d 868, 871 (Tenn. 1983).

The majority points out that neither the developer nor the County can precisely ascertain the ultimate tax liability unless construction proceeds in compliance with the plan. I agree. Nevertheless, it is not unusual, in the realm of tax policy, for the taxpayer to pay an estimate of liability at the outset and then to resolve any differences, whether more or less, at a later date – such as the date of the issuance of a certificate of occupancy or the completion of an audit. While one may contest the wisdom or efficiency of such a scheme, courts should not disregard the statutory text merely because it is "unpleasant or peculiar," as long as it is not "manifestly absurd." <u>Seals v. H&F, Inc.</u>, __ S.W.3d __, __, 2010 WL 152185, at *10 (Tenn. 2010). Legislative purpose is a guiding principle, particularly in the context of tax statutes. <u>Nat'l Gas Distribs., Inc. v. State</u>, 804 S.W.2d 66, 67 (Tenn. 1991).

In my assessment, an interpretation of the statute placing a tax on the actual square footage of development assures that every taxpayer pays only a fair share of the cost of local governmental services – the express purpose of the tax. Williamson County Adequate

Facilities Tax, ch. 118, 1987 Tenn. Priv. Acts at 242. A pre-construction projection would not always serve that aim. Moreover, basing liability on actual square footage would not only encourage a developer to honestly estimate the magnitude of the plan but at the same time provide the flexibility for changes, with full awareness of any additional tax due. A method of accountability is implicit in any tax legislation. I fear that our interpretation today does not assure a principled allocation of the tax burden as envisioned by the terms of the Act.

Because I would have affirmed the judgment of the trial court and the ruling of the Court of Appeals, I must respectfully dissent from the conclusion reached by the majority.


_____
GARY R. WADE, JUSTICE