**FILED**

**September 23, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 10:56 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| CRAIG MULLINS, | ) | Docket No.: 2016-08-0101 |
| | ) | |
| Employee, | ) | |
| | ) | |
| v. | ) | State File Number: 6146-2016 |
| | ) | |
| HONEYWELL INTERNATIONAL, | ) | |
| | ) | |
| Employer. | ) | Judge Amber E. Luttrell |

---

### EXPEDITED HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on August 17, 2016, upon the Request for Expedited Hearing filed by Craig Mullins pursuant to Tennessee Code Annotated section 50-6-239 (2015).

The present focus of this case is whether Mr. Mullins came forward with sufficient evidence from which the Court may conclude he is likely to prevail in establishing that Tennessee and the Court of Workers' Compensation Claims has jurisdiction of this matter. If so, the secondary issue before the Court is whether Mr. Mullins came forward with sufficient evidence showing entitlement to temporary disability benefits. For the reasons set forth below, the Court holds Mr. Mullins came forward with sufficient evidence from which this Court may conclude he is likely to prevail in establishing Tennessee jurisdiction over this claim, but the Court holds Mr. Mullins did not come forward, at this time, with sufficient proof of entitlement to temporary disability benefits.

### History of Claim

Mr. Mullins is a forty-one-year-old resident of Conway County, Arkansas. He worked as a Service Tech Specialist for Honeywell International.[1] (Ex. 2, 3.) Mr. Mullins

---

[1] The Court notes the parties did not indicate the location of Honeywell's corporate/home office. The proof indicated Honeywell has or had branches at various times in Tennessee, Arkansas, Minnesota, and Oklahoma.

1

alleged a work-related injury to his back on August 24, 2015, while working in Morrilton, Arkansas. He stated in an affidavit, "While working at 18 [inches] above the floor for the full work day, on my knees and bent over for the majority of the time on electrical remodel, as I stood up, I felt very sharp pain in lower back and whole left leg." (Ex. 1 at 2.)

The parties advised Mr. Mullins suffered a prior work injury to his back on September 14, 2012, while working for Honeywell performing an assignment in Tennessee. Honeywell accepted compensability of the 2012 injury as a Tennessee claim and settled the case. In this case, the parties agreed Honeywell provided Mr. Mullins medical treatment for the alleged August 24, 2015 injury under the open future medical provisions in the settlement documents for his 2012 work injury.

The medical records indicated on August 25, 2015, one day following the alleged injury at issue, Mr. Mullins sought treatment at Concentra Health Centers in Little Rock, Arkansas. (Ex. 5.) A Concentra "Physician Work Activity Status Report" showed Dr. Scott Carle diagnosed a lumbar strain, spinal stenosis of the lumbar region, and thoracic or lumbosacral neuritis or radiculitis. Dr. Carle recommended light duty restrictions.[2] The work status notes from follow-up visits revealed Mr. Mullins remained under work restrictions. Concentra released Mr. Mullins to the care of a specialist on September 14, 2015. *Id.*

Mr. Mullins subsequently saw Dr. Steven Cathey, a neurosurgeon in Little Rock. Dr. Cathey corresponded with Dr. Carle on September 22, 2015, noting Mr. Mullins' history of three prior lumbar disc procedures. Regarding Mr. Mullins' current complaints, Dr. Cathey stated, "A month or so ago he noted the onset of severe pain in his lower back with radiation down the posterior aspect of his left leg. Although this happened at work, he does not describe any specific injury." *Id.* Dr. Cathey noted Mr. Mullins would see Dr. Edward Saer, his prior surgeon, for further evaluation and noted he would remain off work in the interim. *Id.*

Mr. Mullins saw Dr. Saer on September 29, 2015, and reported increased lower back and left leg pain that started about a month prior at work. *Id.* Dr. Saer noted Mr. Mullins could not relate his symptoms to one specific incident or injury. *Id.* Dr. Saer opined, "He does not appear to have a recurrent disc herniation. He may have had a sprain or strain causing radiculitis, basically an exacerbation of a pre-existing problem. At this point I do not think he needs any surgical treatment." Mr. Saer causally related the exacerbation to Mr. Mullins' work activities. *Id.*

Following his evaluation with Dr. Saer, Mr. Mullins saw Dr. Brent Sprinkle at

---

[2] The Court notes the parties did not admit Concentra's records into evidence but submitted only the work status and therapy notes.

Prolo Little Rock. *Id.* Dr. Sprinkle ordered an epidural steroid injection at L5-S1 and provided light duty restrictions. When Mr. Mullins did not obtain relief from the injection, Dr. Sprinkle opined he had nothing left to offer and released him from his care. However, he maintained light duty restrictions. *Id.*

The final medical note admitted into evidence indicated Mr. Mullins saw Dr. Carlos Roman at Morrilton Pain Clinic. This visit was for an independent medical evaluation with an option to treat, performed at Sedgwick Corp's request, on January 12, 2016. Dr. Roman addressed further treatment options and opined Mr. Mullins was "unable to do his job in his current state or do really anything." Dr. Roman recommended maintaining light duty work restrictions. *Id.*

Mr. Mullins filed a Petition for Benefit Determination (PBD) asserting a new injury and seeking temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN) noting Honeywell's defenses of no new injury and lack of Tennessee jurisdiction. Mr. Mullins subsequently filed a Request for Expedited Hearing seeking temporary disability benefits.

*Mr. Mullins' Testimony*

Mr. Mullins has resided in Morrilton, Arkansas for forty-one years. He originally worked for Honeywell from 2001 through 2009, based out of the Memphis, Tennessee office. Daniel Bales, Service Manager of the Memphis location, supervised Mr. Mullins. He resigned his job at Honeywell for other employment in 2009.

However, in November 2010, Mr. Mullins desired to return to his employment at Honeywell and contacted Mr. Bales, his former boss, to inquire of any available positions. Mr. Bales advised him of a service technician position based out of the Memphis office. Mr. Mullins completed an online application for the position.[3] Mr. Mullins pointed out that Honeywell did not have a branch in Arkansas in 2010. It closed its only Arkansas branch in 2001.

Subsequently, Gee Stukas, a Honeywell recruiter located in Georgia, emailed Daniel Bales on November 4, 2010, proposed terms of an offer of employment for approval. (Ex. 3.) The offer terms indicated Mr. Mullins' site location was Shelby Oaks Drive in Memphis, Tennessee. It further listed the primary city and state of the position was Memphis, Tennessee. Mr. Bales approved the proposed offer terms. *Id.*

---

[3] Mr. Mullins testified there was no Honeywell office in Arkansas during his employment. He stated Honeywell closed its Little Rock, Arkansas office in 2001 and moved everything to the Memphis branch. From the testimony at the hearing, the Court understood that Mr. Mullins was not required to live in Memphis, Tennessee or to be based out of the Memphis location.

Ms. Stukas then contacted Mr. Mullins and offered him the service tech job in Memphis. Mr. Mullins testified Ms. Stukas gave him a couple of days to make a decision. Ms. Stukas also emailed Mr. Mullins a letter from Mr. Bales containing the offer of employment. *Id.* Mr. Bales' offer of employment letter stated, "We are pleased to confirm the details of our offer for the position of Service Tech Specialist, Band 02, located in Memphis, Tennessee reporting to me." *Id.* Mr. Bales further instructed Mr. Mullins to indicate his acceptance of the terms and conditions of the offer by responding to all copied on the email by November 21. Pursuant to those instructions, Mr. Mullins emailed Ms. Stukas his acceptance of the offer of employment on November 19, 2010. *Id.*

Upon accepting the offer, Mr. Mullins traveled to Memphis, Tennessee to meet with Mr. Bales, sign the required paperwork, and pick up essential equipment including his work vehicle, laptop computer, and other electronic devices necessary to begin his employment.

After beginning employment, Mr. Mullins reported again to his boss, Mr. Bales in Memphis. His work territory extended from Jackson, Tennessee to Arkansas. Mr. Mullins explained he worked in Jackson, Tennessee at the Pringles facility four times per year for one week at a time. He worked at the city schools in Memphis, Tennessee every three months for one week at a time. He also performed jobs at another facility in Tennessee for the same period of time, two times per year. Honeywell also required Mr. Mullins to travel to the Memphis office once per month for meetings to discuss accounts and four times per year for two-day meetings.

Concerning his work status following the August 24, 2015 injury, Mr. Mullins testified that his treating doctors had him off work or he was on work restrictions Honeywell could not accommodate from the date of alleged injury through his resignation on August 1, 2016.

*Daniel Bales' Testimony*

Mr. Bales testified by affidavit on behalf of Mr. Mullins. Mr. Bales confirmed he was Service Manager for the Memphis, Tennessee office of Honeywell in 2010. (Ex. 3.) He hired Mr. Mullins out of the Memphis office to work out of the Memphis location. *Id.* Concerning his work territory, Mr. Bales testified, "Mr. Mullins did do work in both Memphis and Arkansas; however, he was hired out of Memphis and was considered a Memphis employee of Honeywell." *Id.*

*Steven Lottes' Testimony*

Steven Lottes, Senior Human Resources (HR) Generalist at Honeywell Building Solutions in Minnesota, testified for Honeywell. Mr. Lottes began working in his position

4

in 2015. Based upon his review of Honeywell's computer records, he testified that Mr. Mullins was "tied to" a branch in Arkansas when he was originally hired in 2001.[4] However, his records did not indicate which branch Mr. Mullins was "tied to" when he was rehired in November 2010. He further stated Mr. Mullins was tied to the Memphis branch beginning on January 11, 2011, through April 29, 2013, when he was switched to an Oklahoma branch. Mr. Lottes confirmed Mr. Bales was Mr. Mullins' supervisor during his employment at Honeywell.

At the Expedited Hearing, Honeywell argued Tennessee has no jurisdiction over Mr. Mullins' alleged injury. Secondly, Honeywell argued that if the Court found otherwise, Mr. Mullins presented no medical proof supporting his assertion that he sustained a new injury entitling him to temporary disability benefits. Under Tennessee's extraterritorial application statute, codified as Tennessee Code Annotated section 50-6-115 (2015), Honeywell argued that Mr. Mullins was not a Tennessee resident at the time of the alleged injury; his employment was not principally localized in Tennessee; and his contract of hire was not made in Tennessee.

Mr. Mullins agreed he was not a Tennessee resident. However, he argued the contract of hire was made in Tennessee since he was hired as a Memphis, Tennessee employee by Daniel Bales, Service Manager of the Memphis branch, and the contract was consummated in Tennessee upon his trip to Memphis to sign the required documentation and pick up his company vehicle and equipment essential to begin his employment with Honeywell. Moreover, Mr. Mullins argued he had substantial contacts with Tennessee during his employment at Honeywell. Thus, Mr. Mullins argued jurisdiction is proper in Tennessee and in this Court for his workers' compensation claim.

**Findings of Fact and Conclusions of Law**

In general, Mr. Mullins bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, Mr. Mullins need not prove every element of his claim by a preponderance of the evidence at this Expedited Hearing stage in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

---

[4] The Court notes Mr. Lottes did not explain the significance of his testimony regarding which branch Mr. Mullins was "tied to."

The central legal issue before the Court is whether Tennessee has jurisdiction over Mr. Mullins' workers' compensation claim. The statute governing this issue provides as follows:

> If an employee, while working outside the territorial limits of this state other than temporarily, suffers an injury on account of which the employee . . . would have been entitled to the benefits provided by this chapter had the injury occurred within this state, the employee . . . shall be entitled to the benefits provided by this chapter; provided, that at the time of the injury:
>
> (A) The employment was principally localized within this state;
>
> (B) The contract of hire was made in this state; or
>
> (C) If at the time of the injury the injured worker was a Tennessee resident and there existed a substantial connection between this state and the particular employer and employee relationship.

Tenn. Code Ann. §50-6-115(b)(2) (2015).

At the Expedited Hearing, it was undisputed that Mr. Mullins was not a Tennessee resident at the time of the injury. Consequently, Tenn. Code Ann. §50-6-115(b)(2)(C) is inapplicable.

Honeywell further contended section 50-6-115(b)(2)(B) is inapplicable because Mr. Mullins accepted Honeywell's job offer, via email, from his home in Arkansas. In support of its argument, Honeywell noted the Tennessee Supreme Court has held, "where an acceptance of an offer is given by telephone, it is generally held that the place of contracting is where the acceptor speaks his acceptance." *Matthews v. St. Paul Prop. & Liab. Ins.*, 845 S.W.2d 737, 739 (Tenn. 1992).

In *Matthews*, the employee was a Tennessee resident who saw an ad for employment in a Tennessee newspaper. *Id.* at 737. Matthews contacted the employer about possible employment as a truck driver and provided the personnel manager the necessary employment information over the phone. *Id.* After screening the information, the employer called Matthews offering him a job, and Matthews accepted. *Id.* He subsequently traveled to Missouri to sign an employment contract and take possession of the truck. *Id.* Matthews subsequently sustained a work injury in Ohio. *Id.* at 738. The Supreme Court held the contract for hire took place in Tennessee, where the employee learned of the job and was offered and accepted the job in a telephone call from his home

6

in Tennessee. *Id.* at 739.

Honeywell argued the case law addressing offer and acceptance via telephone is applicable to the parties' use of email in the present case. The Court agrees. Mr. Mullins did not dispute that he accepted his job at Honeywell by email to Ms. Stukas from his home in Arkansas. Thus, the Court finds Mr. Mullins spoke his acceptance from Arkansas, and under *Matthews*, Mr. Mullins' contract of hire was made in Arkansas.

Having found Tenn. Code Ann. §115(b)(2)(B) and (C) do not apply, the Court's inquiry turns to whether Mr. Mullins' employment was principally localized in Tennessee under section 115(b)(2)(A).

Honeywell contended section 115(b)(2)(A) does not apply because Mr. Mullins' alleged injury occurred in Arkansas. The Court disagrees. Honeywell's characterization of section (A), which states "the employment was principally localized within this state" is misplaced. The central focus when construing any statute is to "ascertain and give effect to the intention or purpose of the legislature as expressed in the statute." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007), *citing State ex rel. Rector v. Wilkes*, 436 S.W.2d 425, 427 (Tenn. 1968)). To that end, unless the language is ambiguous, the Court must derive legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *Id.*, *citing State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). The Court finds the ordinary meaning of section 115(b)(2)(A) concerns where Mr. Mullins' employment was principally localized and not merely where the injury occurred as argued by Honeywell. Had the legislature intended for section 115(b)(2)(A) to solely consider where the injury occurred, the Court finds (A) would have stated "the injury occurred within this state" rather than "the employment was principally localized within this state."

The Tennessee Supreme Court has held determining "localization of employment" involves a detailed examination of the facts surrounding the cause of action." *Bush v. Liberty Mut. Ins. Co.*, No. 02-S-01-9104-CH-00012, 1992 Tenn. LEXIS 33, at *3 (Tenn. Jan. 13, 1992).

At the outset, the Court finds Mr. Mullins appeared calm, at ease, self-assured, steady, confident, forthcoming, reasonable, and honest in providing his testimony. These characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014).

Upon a detailed examination of the proof in this case, the Court finds Mr. Mullins was an Arkansas resident, who Honeywell hired in 2010 for a Memphis, Tennessee service technician position. He worked for Honeywell as a Memphis, Tennessee employee and reported to his boss, Daniel Bales, the Service Manager in Memphis. Mr.

Mullins' work vehicle, computer, and all other equipment essential to his job came from the Memphis office. Notably, according to Mr. Bales, Honeywell considered Mr. Mullins a Tennessee employee. Honeywell did not have an Arkansas branch during Mr. Mullins' employment beginning in 2010. Mr. Mullins sustained his 2015 injury on a job in Arkansas. However, his work territory extended from Jackson, Tennessee to Arkansas. He performed substantial worked in Tennessee, which included assignments at the Pringles facility in Jackson, Tennessee four weeks per year and at the city schools in Memphis, Tennessee four weeks per year. He also performed jobs at another facility in Tennessee for the same period of time, two times per year. Mr. Mullins also regularly traveled to the Memphis office once per month for meetings to discuss accounts and four times per year for two-day meetings.

In light of the above, the Court holds Mr. Mullins came forward with sufficient proof from which this Court may conclude he is likely to prevail in establishing his employment was principally localized in Tennessee.

*Temporary Disability Benefits*

The Workers' Compensation Appeals Board noted the longstanding criteria for temporary disability benefits as follows: "An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), *citing Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn. 1978).

Here, while the medical records indicated various physicians placed Mr. Mullins on work restrictions, the Court finds the medical proof is insufficient, at this time, to establish Mr. Mullins sustained a compensable injury to his back on August 24, 2015. Thus, the Court holds Mr. Mullins has not come forward with sufficient proof from which this Court may conclude he is likely to prevail at a hearing on the merits in establishing entitlement to temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Mullins came forward with sufficient proof from which this Court may conclude that Tennessee has jurisdiction over this matter.

2. Mr. Mullins did not come forward with sufficient proof, at this time, of entitlement to temporary disability benefits. Therefore, Mr. Mullins request for temporary disability is denied at this time.

8

3. This matter is set for an Initial Hearing on October 17, 2016, at 9:30 a.m. Central Time.

**ENTERED this the 23rd day of September, 2016.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Luttrell, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5039 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

9

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, have the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

APPENDIX

Exhibits:

1. Employee's Signed Statement
2. Affidavit of Craig Mullins
3. Affidavit of Daniel Lee Bales
4. Wage Statement
5. Medical records of the following providers:
   a. Concentra Healthcare Centers (AR)
   b. Dr. Steven L. Cathey
   c. Arkansas Specialty Orthopedics
   d. Prolo Little Rock
   e. Morrilton Pain Clinic

Technical record:[5]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Position Statement
5. Employer's Position Statement and Response to Employee's Request for Expedited Hearing

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of September, 2016.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| Richard Click, Esq., Attorney for Employee | | X | rclick@tcmfirm.com |
| Heather H. Douglas, Esq., Attorney for Employer | | X | hdouglas@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov