**FILED**
**Nov 02, 2020**
**10:28 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| VINCENT TAYLOR,<br>    Employee, | ) | Docket No. 2019-06-0165 |
| v. | ) | State File No. 78226-2014 |
| AMERICAN TIRE DISTRIBUTION,<br>    Employer. | ) | Judge Joshua Davis Baker |
| | ) | |

## COMPENSATION ORDER

The Court held a compensation hearing on August 20, 2020, to consider Mr. Taylor's request for permanent partial and temporary disability benefits for an alleged work-related back injury at American Tire Distributors (ATD). He also asks the Court to order ATD to repay his private insurance for the cost of his medical treatment. ATD denies it owes Mr. Taylor anything because he failed to prove medical causation of his back injury. The Court holds that Mr. Taylor proved medical causation of his injury, and ATD must pay permanent-partial and temporary-total disability benefits. The Court further holds ATD must reimburse Mr. Taylor's private insurance for the cost of his care.

### Claim History

Mr. Taylor worked in the warehouse for ATD; his primary duty was sorting tires for shipment. He earned an average of $889.63 per week.

Mr. Taylor worked the overnight shift on September 25 to 26, 2014, then went home to sleep. Upon awakening, his back hurt so badly he had trouble getting out of bed. Fortunately, he was off for the weekend, but he went to the emergency room on Monday, September 29, when the pain continued and worsened.

The emergency room records state that Mr. Taylor complained of "low back pain radiating into his left leg since doing heavy lifting [four] days ago." The provider diagnosed sciatica and discharged him that same day.

1

On September 30, Mr. Taylor filled out an accident report at work listing September 25 as the date of injury. He could not give a time, as he did not notice his injury until September 26. He maintained, however, that it must have happened while he was sorting tires.

Mr. Taylor saw panel physician, Dr. William Dutton, on October 3. The records from that visit listed his date of injury as September 25 and noted his statement that he "strained something while lifting tires." The "plan" section documents "no specific work event" and recommends Mr. Taylor follow-up with his primary care doctor. Dr. Dutton released Mr. Taylor from his care, and he received no further care through workers' compensation.

Mr. Taylor went back to work but returned to the emergency room on October 7. He complained that he felt recurring pain upon returning to work and, after work, awoke with pain radiating down his left side that caused him to experience difficulty walking and lifting weight. The emergency room again diagnosed sciatica and excused him from work until October 13.

Mr. Taylor never went back to work after October 7 but received short- and long-term disability payments up until the summer of 2015. Mr. Taylor paid for the disability policies.

On October 14, Mr. Taylor went to see his primary care doctor, Shuaib Mohyuddin, and used his private insurance to pay for treatment. Dr. Mohyuddin diagnosed lumbar radiculopathy, excused Mr. Taylor from work until October 20, and scheduled a return visit in three weeks. When he returned, Mr. Taylor reported improvement in his pain but also a new symptom, "pins and needles" down his leg to his feet.

Because of his progressing symptoms, Mr. Taylor went to see Dr. Sanat Dixit in November, and again paid with his health insurance. Dr. Dixit took Mr. Taylor off work and recommended an MRI. The MRI results showed Mr. Taylor had an extruded disc and radiculopathy as well as a foot-drop. He performed a microdiscectomy later that month. He eventually released Mr. Taylor on March 30, 2015, to return to work with a restriction of lifting no more than fifty pounds, but did not release him to full duty work until October of 2015.

Three doctors gave opinions on the cause of Mr. Taylor's injury. Dr. Dutton, the only treating doctor who testified, said that he could not link Mr. Taylor's back condition injury and surgery to work because Mr. Taylor never described a specific work event that injured him.

Dr. David West conducted a medical records review but never examined Mr. Taylor. Based on his review, Dr. West believed that Mr. Taylor injured his back at work resulting

in disc herniation that led to his surgery. He assigned a seven-percent impairment rating. On cross-examination, however, Dr. West agreed that he could not determine any inconsistencies among the injury histories Mr. Taylor provided because Dr. West never examined him.

Dr. Robert Landsberg examined Mr. Taylor and completed a medical evaluation. He said, "I feel that his problem all started with the work injury, lifting heavy tires at American Tire," which resulted in the disc herniation and progressive foot drop, leading to the surgery. He further stated it would have been reasonable for Mr. Taylor to be off work or on restricted duties from September 26, 2014, to March 2015. He additionally said he would have assigned no permanent restrictions on Mr. Taylor other than to be careful in his activities.

Dr. Landsberg also stated that all the care Mr. Taylor received for this back injury was reasonable and necessary. Dr. Landsberg reviewed the bills Mr. Taylor paid through his private insurance, and he stated the total charges of $64,705 were normal and customary. He assigned an eight-percent impairment rating.

The parties stipulated to several important issues. They agreed to: a weekly compensation rate of $593.09; Mr. Taylor reached maximum medical improvement on October 12, 2015; and he was not entitled to any permanent-partial disability benefits beyond the initial award.

## Findings of Fact and Conclusions of Law

Mr. Taylor requested permanent partial and temporary disability benefits as well as continuing medical care for his back and reimbursement to his private insurance for payments the insurer made. To prevail, he must initially prove by a preponderance of the evidence that his back injury arose primarily out of and in the course and scope of his employment. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2019); *Panzarella v. Amazon.com, Inc.*, No. E2017-01135-SC-R3-WC, 2018 Tenn. LEXIS 244, at *8 (Tenn. Workers' Comp. Panel May 16, 2018).

The Tennessee Workers' Compensation Act defines "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee[.]" The injury must be caused "by a specific incident, or set of incidents[.]" "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *See* Tenn. Code Ann. § 50-6-102(14) (2019).

Mr. Taylor's testimony showed he suffered an injury at work. He worked overnight on September 25 sorting tires. The following day, he awoke with severe back pain and had

3

trouble getting out of bed. He timely reported the injury, and although he could not pinpoint the exact moment his injury occurred, he identified a specific set of events at work that immediately preceded and produced his back pain. Further, he provided the factual testimony concerning his work on the day of the accident and his condition the next day. The Supreme Court has consistently held that an employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Security, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *6 (Sept. 12, 2017). The Court finds his testimony credible.

Mr. Taylor also proved the medical cause of his injury by a preponderance of the evidence. Proving medical causation requires an expert's "reasonable degree of medical certainty that the employment contributed more than fifty percent" to the cause of an injury. A reasonable degree of medical certainty means that in the medical expert's opinion it is more likely than not that the work caused the injury "considering all causes, as opposed to speculation or possibility." *See* Tenn. Code Ann. § 50-6-102(14)(B)-(D).

Here, three doctors gave depositions: Dr. Dutton, Dr. West, and Dr. Landsberg. Dr. Dutton, the authorized treating physician saw Mr. Taylor only once and released him to return to work, finding "no specific work event" associated with his injury. Dr. West testified that Mr. Taylor herniated a disc in his back while working, which led to his surgery. Dr. Landsberg examined Mr. Taylor and felt his "problem all started with the work injury, lifting heavy tires at American Tire," which resulted in the disc herniation and progressive foot drop, leading to the surgery.

When a Court receives competing testimony from physicians, it must determine which testimony to accept based on a variety of factors, including the qualifications of the physicians, the circumstances of their examination, the information available to each physician, and the importance of that information in the view of other experts. *See Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). Of the three, the Court credits Dr. Landsberg's opinion.

The Court rejects Dr. Dutton's causation opinion because he based it on the erroneous conclusion that Mr. Taylor never cited a specific work event, despite the office note that said Mr. Taylor complained that he "strained something while lifting tires."

The Court rejects Dr. West's opinion because, although he causally related Mr. Taylor's injury to his work, he never examined him. The lack of a physical exam discounts his opinion, especially because he took no medical history.

The Court credits Dr. Landsberg's opinion because it is the most reasonable. He recognized that Mr. Taylor identified lifting tires as the cause of his injury when he first visited Dr. Dutton. He also gave a thorough explanation of how the injury progressed over

4

time and resulted in surgery. In short, his opinion best explains Mr. Taylor's credible testimony about his accident and deteriorating condition.

Regarding permanent partial disability benefits, Dr. Landsberg assigned an eight-percent impairment rating. The Court accredits his impairment opinion and orders ATD to pay Mr. Taylor $21,351.24 (36 weeks x $593.09 per week) in permanent partial disability benefits. *See* Tenn. Code Ann. § 50-6-207(3)(A). Although Mr. Taylor did not reach maximum medical improvement until October 12, 2015, the parties stipulated he is not entitled to any additional benefits.

ATD raised a novel defense to Dr. Landsberg's opinion on permanent impairment that this Court rejects. ATD argued that because Tennessee Code Annotated section 50-6-204(k)(1) states that "[a]ll permanent impairment ratings shall be assigned by the treating physician or chiropractor," the Court cannot rely on his impairment opinion. In addressing this defense, the Court turns to the rules of statutory construction.

The central focus when construing any statute is to "ascertain and give effect to the intention or purpose of the legislature as expressed in the statute." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) (citing *State ex rel. Rector v. Wilkes*, 436 S.W.2d 425, 427 (Tenn. 1968)). To that end, unless the language is ambiguous, the Court must derive legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *Id.*, *citing State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). The Court must also construe statutes in the context of the other sections of the statute. *First Tenn. State Bank, N.A. v. Dougherty*, 963 S.W.2d 507, 509 (Tenn. Ct. App. 1997).

In considering these requirements, the Court holds the statute stands as a directive requiring treating physicians to provide an impairment rating in all cases, even if the opinion is that the employee has no permanent impairment. This conclusion is evident when subsection 50-6-204(k)(1) is read in the context of the entire section. For example, subsection 50-6-204(d)(5) allows parties to apply to the Medical Impairment Rating Registry for an opinion when there are differing opinions on permanent impairment. This subsection assumes a party may seek an impairment rating from a non-treating physician. Additionally, accepting ATD's position would foreclose any employee whose claim is denied on medical causation grounds based on an opinion from a treating physician from recovering workers' compensation benefits in any case. This is not a result the legislature intended.

Turning to temporary total disability benefits, Mr. Taylor must show (1) he is totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability to recover benefits.

*Jewell v. Cobble Constr. and Arcus Restoration*, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 12, 2015). The Court holds Mr. Taylor carried his burden.

Mr. Taylor hurt himself while lifting tires on the overnight shift ending on the morning of September 26, 2014. He reported the injury on September 29, but then returned to work until visiting the emergency room on October 7. Afterward, the medical records show several doctors took him off work, with Dr. Landsberg stating his absence from work until March 31—stated as "through March"—was reasonable under the circumstances. This is a period of twenty-five weeks. The Court credits his testimony and orders ATD to pay Mr. Taylor temporary total disability benefits of $15,417.61 (25 weeks x $593.09 per week). The Court must deny Mr. Taylor any permanent partial disability benefits after March 31, as Dr. Landsberg said he would not have imposed any activity restrictions on Mr. Taylor after that date except to be careful in his activities.[1]

Although Mr. Taylor received short- and long-term disability payments over his period of temporary disability, Mr. Taylor said he paid for the policies. Thus, ATD cannot deduct these payments. *See* Tenn. Code Ann. § 50-6-114(b) (providing for an offset only for an "employer-funded disability plan").

Finally, Mr. Taylor seeks reimbursement to his private insurance for care paid for through his policy. The Court holds ATD must reimburse Mr. Taylor's insurance for the cost of these services.

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" *Id*. at § 50-6-204(a)(l)(A). In providing the treatment, the Workers' Compensation Law requires an employer to "designate a group of three (3) or more independent reputable physicians . . . from which the injured employee shall select one (1) to be the treating physician." *Id*. at 50-6-204(a)(3)(A)(i). If an employer fails to provide a panel, it risks having to pay for all reasonable and necessary medical expenses incurred by an employee for treatment with an unauthorized physician, and also risks having to provide continuing care with the unauthorized physician. *See Young v. Young Elec.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16-17 (May 25, 2016).

Here, ATD provided Mr. Taylor a panel, but the selected physician dismissed his complaints as not work-related after only one visit. Mr. Taylor continued to suffer, so he took the doctor's advice and sought treatment on his own. Dr. Landsberg testified the treatment Mr. Taylor received from private providers was all reasonable and necessary. He further reviewed the bills, totaling $64,705, and stated the charges were normal and

---

[1] Although Dr. Mohyuddin placed temporary restrictions on Mr. Taylor according to the medical records, the doctor did not testify, so the Court did not consider those restrictions in awarding temporary-total disability benefits.

customary for the treatment. Based on this evidence, the Court holds Mr. Taylor had no choice but to seek unauthorized care. Accordingly, his decision to seek unauthorized care was reasonable, and the Court orders that ATD must repay Mr. Taylor's private insurance for the cost of this care.

**IT IS, THEREFORE, ORDERED** as follows:

1. ATD shall provide Mr. Taylor a panel of three physicians for continuing treatment of his back if Mr. Taylor requests additional treatment.

2. ATD shall pay Mr. Taylor $21,351.24 in permanent partial disability benefits.

3. ATD shall pay Mr. Taylor $15,417.62 in accrued temporary disability benefits.

4. ATD shall reimburse Mr. Taylor's private insurance for the cost of his medical treatment.

5. Attorney Luvell Glanton shall receive a fee of twenty percent of the permanent partial disability award, or $4,270.25, and twenty percent of the temporary disability award, or $3,083.52.

6. Costs of $150.00 are assessed against ATD under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (August 2019), for which execution might issue as necessary.

7. ATD shall file a completed Form SD-2 within five days after this order becomes final.

8. Unless appealed, the order shall become final thirty days after issuance.

**ENTERED November 2, 2020.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

7

## APPENDIX

Exhibits:

1. Deposition of Dr. Robert Landsberg
2. Deposition of Dr. William Dutton dated December 18, 2017
3. Deposition of Bryan Garrison
4. ATD Employee Incident Report
5. Concentra Patient Information Form
6. Petition for Benefit Determination filed May 20, 2015
7. Mr. Taylor's Interrogatory Responses
8. Mr. Taylor's Written Discovery Responses
9. ATD Payroll Record
10. Deposition of Dr. William Dutton dated October 27, 2017
11. Deposition of Dr. David West and attached exhibits

Technical Record:

1. Petition for Benefit Determination filed March 19, 2018
2. Dispute Certification Notice filed November 15, 2018
3. Dispute Certification Notice filed May 29, 2020
4. Request for Scheduling Hearing
5. Scheduling Order entered
6. Employer's Motion to Refer Employee to Penalty Unit and Motion for Attorney's Fees and Costs
7. Employee's Response to Motion for Penalty Referral and Attorney's Fees and Costs
8. Employer's Motion to Refer Employee to Penalty Unit and Motion for Attorney's Fees and Costs
9. Notice of Intent to Use Business Records
10. Employer's Motion to Strike Notice of Deposition of Dr. Robert Landsberg
11. Order Granting Motion to Strike entered
12. Employee's Motion for Continuance and Relief from Scheduling Hearing Order
13. Employee's Motion to Exclude Causation Testimony of Dr. William J. Dutton
14. Employee's Notice of Filing Deposition Transcript of Dr. William J. Dutton
15. Employee's Motion in Limine to Exclude Evidence of Settlement Negotiations
16. Employer's Response to Employee's Motion to Exclude Testimony of Dr. William Dutton

17. Employer's Response to Employee's Motion in Limine to Exclude the Notice of Intent to Use Business Records
18. Order Granting Motion for Relief from Scheduling Hearing Order and Continuance
19. Employee's Motion to Continue
20. Employer's Response to Employee's Motion to Continue
21. Order Granting Motion to Continue
22. Motion to Quash the Subpoenas of Anna Mueller or for Protective Order
23. Agreed Protective Order Limiting the Deposition of Anna Mueller
24. Order Denying Motion for Penalty
25. Order Setting Mediation entered
26. Amended Scheduling Hearing Order
27. Employee's Motion and Memorandum to Strike Portion of Employer's Witness List and Pre-Hearing Statement filed
28. Employer's Response to Employee's Motion to Strike filed
29. Employee's Reply to Employer's Response to Employee's Motion to Strike
30. Order Denying Motion to Strike

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on November 2, 2020.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Luvell Glanton, Attorney | | | X | glantonfirm@gmail.com |
| John Lewis, Attorney | | | X | john@johnlewisattorney.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

10



Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*